### JACKSON LUMBER CO. v. McCRIMMON, Tax Collector.

(Circuit Court, N. D. Florida. October 26, 1908.)

1. CONSTITUTIONAL LAW (§ 284*)—DUE PROCESS OF LAW—ASSESSMENT OF TAXES—NOTICE TO PROPERTY OWNER.

While notice to a property owner and an opportunity to be heard at some time during the proceedings is a fundamental requisite to the validity of an assessment for taxation, a statute is not invalid as depriving an owner of his property without due process of law, where it provides for general notice by publication, and fixes definite days for hearings.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 893, 894; Dec. Dig. § 284.

Limitations of taxing power, see note to Grether v. Wright, 23 C. C. A. 515.]

2. TAXATION (§ 4*)—POWERS OF LEGISLATURE—TAXING PROPERTY FOR PREVIOUS YEARS.

It is within the power of the Legislature of a state to provide for the assessment and taxation for past years of property which has escaped taxation for such years.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 4.*]

3. TAXATION (§ 309*)—CONSTRUCTION OF STATUTE—"ASSESSMENT."

The word "assessment," as used in tax statutes, does not mean merely the valuation of the property for taxation, but includes the whole statutory mode of imposing the tax, embracing all of the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion (citing Words and Phrases, vol. 1, pp. 551–552).

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 309.*]

4. CONSTITUTIONAL LAW (§ 284*)—DUE PROCESS OF LAW—ASSESSMENT OF TAXES—VALIDITY OF FLORIDA STATUTE.

Laws Fla. 1907, pp. 13, 14, c. 5596, §§ 22, 23, which provides for the assessment of property for not more than three previous years, where it is

---

found to have escaped taxation for any or all of such years, and that the assessors shall complete the assessment rolls before the first Monday in July in each year, and on that date shall meet with the board of county commissioners for the purpose of hearing complaints, and receiving testimony as to the value of any property as fixed by the assessor with power to review and perfect such assessment, of which meeting notice shall be given by publication, afford a property owner a due opportunity to be heard as to the valuation of his property, and a sale of property for nonpayment of taxes levied on such an assessment is not without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 893, 894; Dec. Dig. § 284.*]

5. TAXATION (§ 317*)—VALIDITY OF ASSESSMENT—MODE OF COMPENSATING ASSESSOR.

The validity of an assessment made by an assessor is not affected by the fact that he is compensated by a commission on the amount of the taxes levied.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 317.*]

6. TAXATION (§ 608*)—INJUNCTION AGAINST COLLECTION OF TAX—GROUND.

A mere irregularity in an assessment or the fact that the tax is excessive will not authorize a court of equity to enjoin its collection.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1233, 1234; Dec. Dig. § 608.*

Persons entitled to injunction restraining or damages for wrongful enforcement of tax, see note to Bayles v. Dunn, 54 C. C. A. 550.]

7. TAXATION (§ 608*)—FEDERAL COURTS.

The federal courts will not grant relief by injunction against the collection of taxes imposed on the property of foreign corporations because of the methods adopted by the tax officers in arriving at the valuation of the property, unless fraud is shown, or it is obvious that a wrong principle has been adopted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1233–1235; Dec. Dig. § 608.*

Taxation of foreign corporations, see note to McCanna & Fraser Co. v. Citizens' Trust & Surety Co., 24 C. C. A. 13.]

In Equity. On motion for preliminary injunction.

The plaintiff, a citizen and a corporation under the laws of the state of Alabama, brings its bill to this court to enjoin the sale of its real estate situated in Walton county, in the Northern district of Florida. The tax sale which the bill seeks to enjoin is for the accrued taxes of the years 1905-06-07, and the amount involved is $4,080. A rule to show cause with a temporary restraining order was granted, and the cause is now before the court on answer to the rule to show such cause and the motion to dissolve the injunction pendente lite.

The bill mainly attacks the constitutionality of the revenue act of Florida, and, to summarize the allegations of the third paragraph, it charges: That the state statute governing the assessment and collection of taxes authorizes the tax assessor to value real estate without giving notice to the taxpayer, except notice for the purpose of securing from the several taxpayers the description of their real estate. That by the taxing law of the state owners of real estate are neither authorized, permitted, nor required to value their real estate for the purpose of assessment. That there is no provision in the act for complaints to the assessor for excess valuation or to the board of county commissioners (the reviewing and equalizing board) before the assessment made by the assessor becomes final, "except that class of taxpayers, assessment of whose property by the assessor shall have been raised by the board of county commissioners, and with such class the board of county commissioners are required by said assessment laws to give the taxpayers 15 days'

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

notice of the time and place when said board will meet to hear complaints from those of the class of taxpayers who feel aggrieved at the increase of valuation, which may have been made by said board over and above the value fixed by the assessor," "and that it is only this class of taxpayers for whom there is provided any notice to complain or opportunity to be heard." That complainant was not one of the latter class, and, notwithstanding that it had made due return of its property situated in Walton County for assessment, the assessor, without notice to the complainant, had increased complainant's property valuations from $92,082, as returned by it, to $221,769, and that the tax laws of Florida require the assessor to complete the assessment rolls by the first Monday of July, 1907, and to deliver the same to the tax collector with his warrant attached requiring the collector to make collection in accordance with said assessment, and to that end to advertise and sell so much of said real estate as may be necessary to satisfy delinquent taxes. That, if such sale is permitted, the purchaser thereat would receive a certificate which after two years will inure into a deed from the state to said real estate. That the assessment made without any provisions in the acts for notice of the increased valuation, and with no provision for an opportunity to be heard by the assessor or board before the assessment became fixed and final is a nullity, as being a deprivation of property without due process of law and in contravention to the fourteenth amendment to the Constitution.

Equitable interference is sought by the bill on the further grounds that, by the statute in question, the compensation of the assessor is fixed on a commission basis on the valuation of the property assessed, his compensation was correspondingly increased, that his action, being of a judicial nature, his assessment was therefore incompetent because of his pecuniary interest therein. It is also averred that the assessor refused to assess the property by the descriptions given by the owner, and arbitrarily adopted his own method of listing the property for taxation.

Wm. W. Flornouy, for complainant.

S. K. Gillis, for defendant.

SHEPPARD, District Judge (after stating the facts as above). It will be observed from this statement of the case that the plaintiff seeks his remedy here on the theory that the tax statute of Florida (chapter 5596, p. 1, Laws Fla. 1907) is defective in respect to the essential requirements of notice and opportunity to the taxpayer, and that the provisions of the statute therefore fail to meet the requirements of due process of law, as ordained by the fourteenth amendment. All that due process implies when applied to tax proceedings may not be readily defined, but enough has been said on the subject by judges and text-writers to leave no uncertainty that the "door of opportunity" must be open to the taxpayer to at least importune and plead with the powers who would "lade him with burdens grievous to be borne." While the process of taxation may not require the same kind of notice as judicial proceedings, or even proceedings for "betterment" assessments, or taking private property under power of eminent domain, the Supreme Court has settled the law that the assessment of a tax is action judicial in its nature, requiring for the legal exertion of that power that opportunity to appear and to be heard is indispensable; that somewhere during the process of assessment the taxpayer must have notice and opportunity to be heard; that it must be provided as an essential part of the statutory provision, and not awarded as a mere matter of grace to the taxpayer. Weyerhaeuser v. Minn., 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583; Central of Ga. v. Wright, 207 U.

S. 137, 28 Sup. Ct. 47, 52 L. Ed. 137; Londoner v. Denver, 210 U. S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103; Security Trust Co. v. Lexington, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204. We have seen that notice is a fundamental requisite to the validity of the assessment, and that it must be provided for in the legislative scheme for taxation, or the statute may be repugnant to the due process requirement of the fourteenth amendment.

Let us examine the provisions of the statute on that subject in order to determine whether the sale of complainant's property in the manner designed by the Legislature would be a deprivation of its property without due process of law; for it is not a question of methods adopted for the assessment, but whether or not the scheme as devised by the lawmaking power meets the indispensable requirements of notice and opportunity before there is deprivation of property. Unless the statute, which is the foundation of all authority for collection of the tax, secures to the taxpayer this constitutional guaranty of due process, the tax proceeding, however regular, could not import legality to a sale of complainants' property, but, as was recently held by the Supreme Court in Longyear v. Toolan, 209 U. S. 417, 28 Sup. Ct. 506, 52 L. Ed. 859:

"If the statute gives him full opportunity to be heard as to the assessment on definite days, and definitely fixes the time for payment and the time for sale in case of default, so that he cannot fail if diligent to learn of the pendency of the sale, he is not denied due process of law because the notice of sale is by publication, and not by personal service."

Referring to the provisions contained in the statute on the subject-matter under consideration, we find authority for the assessment of back taxes contained in section 22, c. 5596, p. 13, Laws 1907, as follows:

"If any county assessor of taxes when making his assessment shall discover that any land in his county has for any reason escaped taxation for any or all of the three previous years, or that any land was illegally sold for taxes and was then liable for taxation, he shall, in addition to the assessment of such lands for that year, assess same separately for such year or years that they may have escaped taxation. * * * Noting distinctly the year when such land escaped such taxation, and such assessment shall have same force and effect as it would have had if made in the year that same escaped taxation, and taxes shall be levied and collected thereon in like manner and together with the taxes of the year in which the assessment is made, but no land shall be assessed for more than three years of taxation, and all lands shall be subject to such taxation, so escaping taxation to be assessed into whose ever hands they may come."

It would seem that the authority for back assessments for the years 1905–06, objected to, was full and explicit, and that the power of the Legislature to subject property which has escaped taxation is too well settled to require more than the citation of cases. F. C. & P. v. Reynolds, 183 U. S. 476, 22 Sup. Ct. 176, 46 L. Ed. 283; Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 16 Sup. Ct. 83, 40 L. Ed. 247; Security Trust Co. v. Lexington, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204.

Now on the question of notice and opportunity, we find the following provisions contained in sections 23 and 24 of chapter 5596, supra:

"The county assessor of taxes shall complete the assessment rolls of their respective counties on or before the first Monday in July in every year, on

which day such assessors shall meet with the board of county commissioners at the clerk's office of their respective counties for the purpose of hearing complaints and receiving testimony as to the value of any property, real, or personal, as fixed by the county assessor of taxes, of perfecting, reviewing and equalizing the assessment, and may continue in session for that purpose from day to day for one week, or as long as shall be necessary. * * *

"Due notice of such meetings shall be given by publication in a newspaper published in such county, or by posting a notice at the court house door, if there be no newspaper published in that county, at least fifteen days before the board will be in session for the purpose of hearing complaints and receiving testimony as to the value of any property as fixed and assessed by County tax assessor; provided, that the county commissioners of any county may, if they deem it necessary, extend the time for the completion of such assessment roll and for the purpose of revising and equalizing the assessment, a similar extension, not exceeding thirty days, giving due notice and opportunity to be heard as to assessment and values as hereinbefore provided.

"Should the board increase the value fixed by the county assessor of taxes of any real estate or personal property, due notice thereof shall be given to the owner or agent of such property by publication in a newspaper published in the county, or by posting a notice at the courthouse door, if there be no newspaper published in the county, at least fifteen days before the board will be in session, to hear any reason that such persons may desire to give why the valuation fixed by the board shall be changed.

"The board shall meet on the first Monday in August or September of each year for the purpose of hearing complaints from owners or agents of any real estate or personal property the value of which shall have been fixed by the assessor, or changed by them, and for that purpose the board shall sit as long as may be necessary.

"Sec. 24. The board of county commissioners shall have full power to equalize the assessment of real estate or personal property in their respective counties, and for that purpose may raise or lower the value fixed by the assessor of any particular piece of real estate or other item or items of personal property."

This act was approved and became operative by its terms June 17, 1907. We have already seen by the express terms of the statute that the assessor shall meet with the board on the first Monday of July of every year, previous notice of which is provided, for the purpose of hearing complaints and receiving testimony as to the valuations fixed by the assessor of any property real or personal, and of reviewing and equalizing the assessment, and, if necessary, extend the time for revising and equalizing, giving due notice and opportunity to be heard as to assessment and value as therein provided. Again, there is further provision for notice and opportunity to be heard by any person complaining because of any raise made in the valuation of his property from that made by the assessor. Section 27 of the act provides that, after the county commissioners shall have reviewed and equalized the tax assessment and the amounts to be raised determined, the assessor shall calculate and carry out the total in separate columns the several amounts to be raised for various purposes.

It may be important so far as the effect of the statute in this case is concerned to know when the assessment was made. The word "assessment," as used in tax statutes, does not mean merely the valuation of the property for taxation. It includes the whole statutory mode of imposing the tax. It embraces all the proceedings for raising money by the exercise of the power of taxation from the inception to the conclusion of the proceedings. Strictly speaking, it is an official esti-

mate of the sums which are to constitute the basis of apportionment of taxes between individuals subject to taxation within the district. As the word is more commonly used, an assessment consists of two processes: Listing the property to be taxed, and of calculating the sums which are to be the guide in the apportionment of the tax between them. 1 Words & Phrases, 551, 552; U. S. v. Erie Ry., 107 U. S. 1, 2 Sup. Ct. 83, 27 L. Ed. 385. Thus it will be seen that the pro-- visions of the statute for notice and opportunity to be heard were effective before the completion of the assessment for the year 1907; and, if the complainant had the benefit of this statute the provisions of which seem adequate for notice and opportunity, can it be said that complainant was by the terms of the act denied due process of law? Personal notice to the taxpayer has not been held essential, nor the strictness of notice usual in court proceedings required. The statute, indeed, should be liberally construed, and tax proceedings will not be declared lacking in due process of law by enforced collection of taxes merely because it may in individual cases work hardships or impose unequal burdens. King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925, 43 L. Ed. 214; Kelly v. Pittsburg, 104 U. S. 78, 26 L. Ed. 659; Hodge v. Muscatine Co., 196 U. S. 276, 25 Sup. Ct. 237, 49 L. Ed. 477; Hibben v. Smith, 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195; Glidden v. Harrington, 189 U. S. 255, 23 Sup. Ct. 574, 47 L. Ed. 798. Section 23 of the statute, supra, affords to the taxpayer ample opportunity to be heard on the assessment made, and the complainant is bound at his own peril to know the law, and, when the opportunity to be heard is given by the provisions of the statute, it has been held sufficient. Judson on Taxation, 325; Hager v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569. Notwithstanding the fact that the assessor may have increased the valuations without notice, the statute imparted notice and afforded opportunity for complainant, and this in my judgment satisfies the requirement of due process.

The contention that the tax assessor was pecuniarily interested in the amount of taxes imposed or collected by reason of the fact that his compensation was fixed on a percentage basis, and that, therefore, the greater the valuation the greater correspondingly his remuneration, is not sustained by an examination of the statute. The tax assessor is compensated by a commission or per centum, not upon the aggregate valuation of the whole property assessed, but upon the amount of the whole taxes levied. Even had the system pursued tended to increase the compensation of the assessor, the authorities hold that his office is not judicial in the sense that his interest would impugn his judgment, and, further, that his interest would be excused on the ground of necessity. Cooley on Torts, 492; 27 Am. & Eng. Cyc. (2d Ed.) 665; Oskamp v. Lewis, Auditor, et al. (C. C.) 103 Fed. 906.

The objection made against the validity of the assessment because the assessor refused to adopt the description of the property as returned by the taxpayer is not one that can be urged in a court of equity. It was said by Justice Miller in the State Railroad Cases, 92 U. S. 575, 23 L. Ed. 663:

"That neither the mere illegality of the tax complained of nor its injustice nor irregularity of themselves give the right to an injunction in a court of equity."

Again the Supreme Court of Florida in King v. Gwynn, 14 Fla. 32, has said:

"A bill in equity will not be sustained which seeks to enjoin the collection of a tax on the ground of mere irregularity in the assessment or the excessiveness of the tax."

This would seem sufficient to dispose of this objection, even in the absence of section 2006 of the General Statutes of Florida of 1906, as pointed out by the Supreme Court of this state in L. & N. Ry. Co. v. Board of Public Instruction, 50 Fla. 222, 39 South. 481, as the statutory method designed for correction of errors and irregularities of assessment.

After a careful review of the questions submitted, I find no sufficient reason for equitable interference against the collection of the taxes imposed by this assessment. It is a principle of law so well recognized as to become almost a canon of federal jurisdiction that the federal courts will not grant relief by injunction against the collection of taxes imposed on foreign corporations because of the methods adopted by tax officers in arriving at the valuation of the property unless fraud is shown, or it is obvious that a wrong principle has been adopted. C., B. & Q. Ry. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.

The prayer for injunction pendente lite is denied, and the restraining order heretofore allowed is dissolved